BAP No. CC-26-1031

## UNITED STATES BANKRUPTCY COURT
## BANKRUPTCY APPELLATE PANEL
## FOR THE NINTH CIRCUIT

---

### *IN RE:* BABAK KAZEMI SHIRAZI, DEBTOR

---

### SEYED JAFAR JAFARI,
### PLAINTIFF and APPELLANT

### V.

### BABAK KAZEMI SHIRAZI,
### DEFENDANT and APPELLEE

---

**Appeal from the United States Bankruptcy Court
for the Central District of California – Santa Ana Division
CHAPTER 7 CASE NO. 8:23-bk-10805-SC
ADVERSARY PROCEEDING NO. 8:23-ap-01109-SC
BAP NO. CC-26-1031**

---

### APPELLEE'S RESPONSE BRIEF

---

Baruch C. Cohen, Esq. (SBN 159455)
LAW OFFICE OF BARUCH C. COHEN
    A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
Tel: (323) 353-9535
email: baruchcohen@baruchcohenesq.com

*Attorney For Appellee/Defendant Babak Kazemi Shirazi*

*Certification Required by BAP Rule 8015(a)-1(a)*

*Jafari v Shirazi*
*BAP No. CC-26-1031*

## APPELLEE'S CERTIFICATION AS TO INTERESTED PARTIES

The undersigned certifies that the following parties have an interest in the outcome of this appeal. These representations are made to enable judges of the Panel to evaluate possible disqualification or recusal:

Seyed Jafar Jafari, Plaintiff and Appellant

Babak Kazemi Shirazi, Defendant and Appellee

Baruch C. Cohen, Esq., Attorney for Appellee/Defendant

Evan Barkley Frank, Esq., Attorney for Appellant/Plaintiff

Hon. Scott C. Clarkson, US Bankruptcy Court

Charles Shamash, Esq., Attorney for Debtor Babak Kazemi Shirazi

Nicholas S Nassif, Esq., Attorney for Plaintiff Masoud Jamali

Robert Hindin, Esq., Attorney for Defendant Babak Kazemi Shirazi

DATED: May 18, 2026                    By   */s/ Baruch C. Cohen*
                                              Baruch C. Cohen, Esq.

2

## TABLE OF CONTENTS

MEMORANDUM OF POINTS & AUTHORITIES ...............................................6

INTRODUCTION ...............................................................................6

THIS APPEAL IS NOT ABOUT PROCEDURE – IT IS ABOUT
ACCOUNTABILITY IN THE FACE OF SUSTAINED
NONCOMPLIANCE ...............................................................7

ACTUAL NOTICE DEFEATS TECHNICAL SERVICE OBJECTIONS ....8

SELF-CREATED ECF FAILURES CANNOT VOID SERVICE .................9

POST-DEADLINE NOTICE CLAIMS ARE WAIVED..............................9

THE BANKRUPTCY COURT CORRECTLY FOCUSED ON CONDUCT,
NOT FORMALITY ..............................................................10

SELECTIVE RECORD MANIPULATION: THE OMISSION OF DOC-126
IS NOT OVERSIGHT – IT IS ADVOCACY BY ERASURE ..........10

A TECHNICALITY CANNOT RESCUE A FORFEITED CASE ..............11

THE BANKRUPTCY COURT DID EXACTLY WHAT MALONE
REQUIRES ...........................................................................12

THE RECORD REFLECTS SUSTAINED NONCOMPLIANCE –
NOT ISOLATED ERROR .....................................................12

THE COURT IDENTIFIED AND APPLIED THE CORRECT LEGAL
STANDARD ..........................................................................13

EXPRESS APPLICATION OF THE MALONE FRAMEWORK
SATISFIES HINKSON ..........................................................13

THE COURT'S APPLICATION WAS SUPPORTED – NOT ILLOGICAL
...............................................................................................14

EACH MALONE FACTOR IS GROUNDED IN THE RECORD
...............................................................................................14

EXPEDITIOUS RESOLUTION – WEIGHS IN FAVOR OF DISMISSAL ........................................................14

DOCKET MANAGEMENT – HEAVILY WEIGHS IN FAVOR..........................................................................16

PREJUDICE – PROPERLY FOUND .....................................18

MERITS POLICY – ACKNOWLEDGED BUT OUTWEIGHED .............................................................19

LESSER SANCTIONS – EXPRESSLY CONSIDERED AND REJECTED....................................................................20

THE COURT REJECTED THE "COUNSEL FAULT" DEFENSE ......................................................................22

CLIENT RESPONSIBILITY IS WELL-ESTABLISHED LAW ......................................................................22

THE COURT RELIED ON WARNINGS – A CRITICAL FACTOR ......................................................................23

DISMISSAL FOLLOWED EXPLICIT WARNINGS.............23

THE COURT DID NOT RELY ON A SINGLE MISSTEP ..............25

PATTERN – NOT INCIDENT ...............................................25

THE SERVICE ARGUMENT DOES NOT SAVE APPELLANT ......................................................................26

THIS WAS A TEXTBOOK EXERCISE OF DISCRETION – NOT AN ABUSE........................................................................27

CONCLUSION ........................ ........................................ 28

CERTIFICATE OF COMPLIANCE ....... . ................................. 30

PROOF OF SERVICE ................... .............................. 31

## TABLE OF AUTHORITIES

### CASES

*Hamilton v. Neptune Orient Lines, Ltd.*, 811 F.2d 498, 500 (9th Cir. 1987) ..........24

*Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986) ...................................17

*Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962) .........................................22

*Malone v. U.S. Postal Service*, 833 F.2d 128, 130–32 (9th Cir. 1987) ....................
.............................................................................. 6, 12-13, 15, 17, 19-21, 26-28

*Morris v. Morgan Stanley*, 942 F.2d 648, 651 (9th Cir. 1991 ) ...............................19

*Oliva v. Sullivan*, 958 F.2d 272 (9th Cir. 1992)......................................................24

*Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) ................................ 14-15

*United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) ...............................
....................................................................................... 13-14, 16, 20, 22, 27

*United States v. National Medical Enterprises, Inc*., 792 F.2d 906, 912–13 (9th Cir.
1986) ....................................................................................................................21

*Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) .......................15

I.      MEMORANDUM OF POINTS & AUTHORITIES

A.      INTRODUCTION

1.      THIS APPEAL IS NOT ABOUT PROCEDURE – IT IS ABOUT SUSTAINED DISREGARD OF COURT-ORDERED OBLIGATIONS

This appeal attempts to recast a dismissal grounded in sustained noncompliance as a technical dispute over service and attorney error. The record does not support that characterization.

The bankruptcy court did not dismiss this adversary proceeding because of a single missed deadline or isolated procedural lapse. It dismissed the case after repeated failures to comply with court orders, missed deadlines despite explicit warnings, failure to participate in required litigation obligations, and continued inaction even after actual notice of the operative proceedings.

Appellant's arguments reduce to three propositions: (1) a technical service objection overrides actual notice; (2) counsel's failures excuse the litigant's noncompliance; and (3) the bankruptcy court failed to apply the governing standard. The record defeats all three.

The bankruptcy court expressly applied the controlling *Malone* framework, conducted a factor-by-factor analysis, considered lesser sanctions, issued repeated warnings, found prejudice, and concluded that continued noncompliance rendered

dismissal appropriate. Under the deferential abuse-of-discretion standard articulated in *Hinkson*, that ruling was not error – it was a textbook exercise of discretion.

This appeal does not identify a misapplication of law. It asks the Panel to excuse a record of repeated noncompliance through post hoc procedural technicalities. Ninth Circuit law does not permit that result. The order should be affirmed.

B.     **ACTUAL NOTICE DEFEATS TECHNICAL SERVICE OBJECTIONS**

Appellant's argument rests on a single technical premise: that the Motion to Dismiss was not electronically served on newly substituted counsel at the moment of filing. Even assuming arguendo, some defect in initial service, the argument fails because Appellant indisputably received actual notice and had a full opportunity to respond.

By October 2025, subsequent filings expressly referenced the Motion to Dismiss, and the Court's October 28, 2025 Order continued the hearing while preserving the existing opposition deadlines. At that point, any arguable defect in service was cured. Due process requires notice and an opportunity to be heard — not perfect procedural mechanics.

What followed is dispositive. Appellant did not file a timely opposition, seek an extension, move for relief, or alert the Court to any alleged service issue before the deadline expired. Instead, the objection surfaced only after noncompliance had already occurred.

The issue, therefore, is not defective service. It is failure to act despite actual notice. That does not warrant reversal.

### C. SELF-CREATED ECF FAILURES CANNOT VOID SERVICE

The alleged service defect was self-created. The record reflects that when Appellant's current counsel filed the notice of association and substitution [Docs. 91, 93], counsel failed to properly place himself on the Court's ECF service list – the very issue addressed in Doc-126. That omission is attributable to Appellant's counsel, not Appellee.

An attorney cannot create a notice problem through his own filing deficiencies and then invoke that problem as a basis for reversal. Counsel bears the responsibility to ensure proper ECF registration, appearance, and inclusion on the Court's service list. Those obligations are entirely within counsel's control.

Appellee served counsel of record through the Court's ECF system. The system functioned exactly as intended. If current counsel failed to receive electronic notice because his appearance was not properly effectuated within that

system, that failure does not invalidate service, suspend deadlines, or shift responsibility to the opposing party.

To hold otherwise would reward self-created procedural defects and undermine the reliability of electronic filing procedures. The law does not permit that result.

## D. POST-DEADLINE NOTICE CLAIMS ARE WAIVED

Appellant's argument fails for an additional reason: waiver.

The record reflects that counsel received multiple subsequent notices relating to the Motion to Dismiss, including court orders and related filings, yet never raised any service objection within the operative timeframe. Counsel did not move to strike the motion, seek an extension, request relief based on excusable neglect, or otherwise alert the Court before the deadline expired.

Instead, the service objection surfaced only after the opposition deadline had passed. That is not diligence. It is forfeiture.

A litigant with actual notice cannot remain silent, allow deadlines to expire, and later invoke a technical service objection as a retroactive escape hatch. Procedural objections must be timely asserted or they are waived.

///

///

E. **THE BANKRUPTCY COURT CORRECTLY FOCUSED ON CONDUCT, NOT FORMALITY**

The bankruptcy court did not dismiss this adversary proceeding based on a technical defect in service. It evaluated the full procedural record, including Appellant's failure to respond after actual notice, repeated noncompliance with deadlines, and failure to meaningfully participate in the litigation process.

Critically, the Court expressly considered – and rejected – the service argument, finding that even assuming imperfect service, Appellant had actual notice and failed to act. That factual determination is supported by the record and entitled to substantial deference under the abuse-of-discretion standard.

This was not a case involving surprise or lack of notice. It was a case where Appellant knew of the motion, knew of the deadlines, and chose not to respond. The bankruptcy court properly focused on that conduct – not procedural formalism.

F. **SELECTIVE RECORD PRESENTATION OBSCURES THE DISPOSITIVE REPLY**

Appellant's record designation omits – or at minimum obscures – the very filing that defeats the service argument advanced on appeal.

Although Appellant identifies the Motion to Dismiss [Doc. 97] and the Opposition [Doc. 124], he does not clearly designate the corresponding Reply and

Declaration [Doc. 126], which directly address the ECF notice issue, the chronology of actual notice, and counsel's post-notice inaction. Instead, the designation references a generic "Reply Brief to Opposition" [Doc. 113], without identifying the underlying motion or subject matter.

That omission is consequential. Doc-126 contains the operative facts the bankruptcy court relied upon in rejecting the service argument and finding sustained noncompliance. Without that filing, the record appears complete while omitting the very document that defeats Appellant's position.

Appellant bears the burden of providing an adequate record for appellate review. That burden is not satisfied by vague designations that obscure dispositive filings or omit materials necessary to evaluate the claimed error. Appellee has therefore included Doc-126 in the excerpts to ensure the Panel has a complete and accurate record. On that record, Appellant's service argument fails.

### G. A TECHNICALITY CANNOT RESCUE A FORFEITED CASE

Appellant's service argument is not a due process claim. It is a post hoc justification for a missed deadline.

The law does not permit reversal under these circumstances. Actual notice cures technical defects. Self-created filing errors do not invalidate service. And objections raised only after deadlines expire are waived.

The Bankruptcy Court acted well within its discretion in dismissing the adversary proceeding. The order should be affirmed.

### H. THE BANKRUPTCY COURT DID EXACTLY WHAT MALONE REQUIRES

#### 1. THE RECORD REFLECTS SUSTAINED NONCOMPLIANCE – NOT ISOLATED ERROR

Appellant attempts to reduce the dismissal to "calendaring mistakes" and counsel-related difficulties. The bankruptcy court expressly rejected that characterization.

The January 20, 2026 Dismissal Order found "a sustained pattern of noncompliance with Court-ordered obligations that materially impeded the orderly progression of this adversary proceeding." That finding was grounded in the procedural history of the case: missed deadlines, failure to comply with scheduling orders, failure to participate in required litigation obligations, and failure to seek timely relief despite repeated opportunities to do so.

Critically, the Court expressly distinguished between isolated error and ongoing disregard of court-imposed obligations, explaining that the dismissal did not "turn on a single missed filing or an isolated procedural lapse," but on continuing noncompliance despite explicit warnings.

12

That is precisely what *Malone* requires. The bankruptcy court did not impose dismissal based on a transient mistake. It evaluated a documented pattern of sustained noncompliance and concluded that the proceeding could no longer advance in an orderly manner. On this record, dismissal was not only permissible – it was warranted.

## I. THE COURT IDENTIFIED AND APPLIED THE CORRECT LEGAL STANDARD

### 1. EXPRESS APPLICATION OF THE MALONE FRAMEWORK SATISFIES HINKSON

The first step under the governing abuse-of-discretion framework is straightforward: the reviewing court asks whether the trial court identified the correct legal rule. See *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). The bankruptcy court did precisely that. It did not proceed by approximation, inference, or generalized equitable reasoning. It anchored its analysis in the controlling Ninth Circuit standard governing dismissal for failure to prosecute – namely, the five-factor framework articulated in *Malone v. U.S. Postal Service*, 833 F.2d 128, 130–32 (9th Cir. 1987), and its progeny.

The Order makes this point explicit. It states, in clear and unmistakable terms, that "the Ninth Circuit applies the five-factor framework set forth in *Malone*," and proceeds to analyze the dismissal through that exact lens. (Order,

Dkt. 128, at p. 5, lines 6-8). This is not a case where the court's reasoning must be reconstructed or implied from the outcome. Nor is it a case where the court applied a generalized notion of fairness untethered to governing law. To the contrary, the court identified the precise controlling standard and structured its analysis around it.

That is the end of the first *Hinkson* inquiry. Where, as here, the trial court expressly identifies and applies the correct legal rule, there is no legal error. The appellate inquiry therefore proceeds – if at all – only to the second, highly deferential step. But Appellant's argument falters at the threshold. The record confirms that the bankruptcy court did exactly what *Hinkson* requires: it selected the correct legal framework and applied it to the facts before it.

## J. THE COURT'S APPLICATION WAS SUPPORTED – NOT ILLOGICAL

### 1. EACH MALONE FACTOR IS GROUNDED IN THE RECORD

#### a) EXPEDITIOUS RESOLUTION – WEIGHS IN FAVOR OF DISMISSAL

The bankruptcy court's conclusion that the public's interest in the expeditious resolution of litigation favored dismissal was not only reasonable – it was compelled by the record and fully consistent with controlling Ninth Circuit

14

authority. The Order details a pattern of repeated delays, missed deadlines, and a failure to advance the adversary proceeding in accordance with court-imposed obligations, including the failure to file a unified statement of objections, repeated noncompliance with scheduling directives, and delay in responding to dispositive motion practice. These were not trivial or technical lapses; they reflected a breakdown in the orderly progression of the case.

Under *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002), the Ninth Circuit has made clear that "[t]he public's interest in expeditious resolution of litigation always favors dismissal," (citing *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)) particularly where a litigant fails to pursue the case in a timely manner. That principle applies with full force here. As in *Pagtalunan*, where the plaintiff's failure to act over a period of months justified dismissal, the bankruptcy court was entitled to conclude that repeated delays and noncompliance interfered with the efficient administration of justice and weighed in favor of terminating sanctions.

Moreover, *Pagtalunan* emphasizes that the trial court is "in the best position to determine whether the delay in a particular case interferes with docket management and the public interest." The bankruptcy court exercised precisely that institutional judgment here, based on a developed record of delay and

nonperformance. Far from being illogical or unsupported, its conclusion reflects a straightforward application of Ninth Circuit precedent to the facts before it.

In short, this is not a case where the expeditious-resolution factor was assumed or glossed over. It was grounded in documented delay, supported by the record, and aligned squarely with *Pagtalunan*. Under *Hinkson*, that is the end of the inquiry.

### b) DOCKET MANAGEMENT – HEAVILY WEIGHS IN FAVOR

The bankruptcy court's analysis of the docket-management factor was firmly grounded in the record. This was not a case involving isolated delay or minor procedural lapses. It was a case requiring repeated judicial intervention to compel basic compliance with court-ordered obligations.

As the Court expressly found, the record reflected "repeated court case-management actions intended to move the proceeding forward," together with continuing judicial supervision necessitated by Plaintiff's ongoing noncompliance.

Under those circumstances, the Court reasonably concluded that docket-management concerns weighed heavily in favor of dismissal. Repeated failures to comply with deadlines and procedural obligations prevented the adversary proceeding from advancing in an orderly manner and imposed a continuing burden

on the Court's administration of its docket. That conclusion was fully supported by both the record and Ninth Circuit authority.

This is exactly the scenario contemplated by *Malone v. U.S. Postal Service*, 833 F.2d 128, 131 (9th Cir. 1987), and *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986), where the Ninth Circuit emphasized that district courts must be afforded deference in managing their dockets and are not required to endure repeated noncompliance that impedes case progression. As the court explained, "[i]t is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants," and trial courts are "in the best position to determine what period of delay can be endured before its docket becomes unmanageable."

The facts here align squarely with that principle. The bankruptcy court was required to issue multiple directives, monitor compliance, and address persistent procedural deficiencies, all without meaningful progress toward resolution. This is not merely a burden on efficiency – it is a direct interference with the Court's institutional obligation to manage its docket and allocate its limited resources. As *Henderson* makes clear, where a litigant's conduct produces precisely that result, dismissal is not only permissible – it is within the core of the court's discretionary authority.

Viewed through the deferential framework mandated by *Hinkson v. United States*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc), the bankruptcy court's conclusion cannot be characterized as illogical, implausible, or unsupported by the record. To the contrary, it reflects a measured and reasoned response to a documented pattern of ongoing noncompliance that imposed a concrete and continuing burden on the Court's ability to manage its docket. This is precisely the circumstance the second *Malone* factor is intended to address. The record does not present speculative or minimal delay; it demonstrates repeated failures that required judicial intervention and prevented orderly case progression. In that context, the bankruptcy court's determination that docket management concerns weighed heavily in favor of dismissal was not merely permissible – it was a faithful application of controlling Ninth Circuit precedent to an evidentiary record that left little room for a contrary conclusion.

c)      **PREJUDICE – PROPERLY FOUND**

Appellant's assertion that "no prejudice" existed is irreconcilable with both the record and controlling Ninth Circuit authority. The bankruptcy court expressly found that Plaintiff's repeated delays and noncompliance impaired the orderly resolution of the adversary proceeding and interfered with the Court's ability to adjudicate the case, including Plaintiff's failure to participate in required meet-and-confer efforts and to engage meaningfully in the discovery process. That

conclusion is not only supported by the record – it is compelled by it. Critically, the court did not reach this conclusion in a vacuum; it relied on governing precedent, expressly citing *Morris v. Morgan Stanley*, 942 F.2d 648, 651 (9th Cir. 1991 ) which recognizes that a failure to prosecute diligently may itself justify dismissal even absent a specific showing of trial prejudice. Ninth Circuit law is clear that unreasonable delay and noncompliance give rise to a presumption of prejudice, particularly where such conduct threatens to interfere with the rightful decision of the case through the erosion of evidence and the passage of time. When viewed through this settled framework, the bankruptcy court's determination was not speculative or conclusory; it was a direct and faithful application of controlling law to a record reflecting sustained delay and procedural breakdown. That alone defeats Appellant's prejudice argument and independently supports the Court's exercise of discretion.

d)      **MERITS POLICY – ACKNOWLEDGED BUT OUTWEIGHED**

Appellant's claim that the bankruptcy court ignored the policy favoring disposition on the merits is contradicted by the Order itself. The court expressly acknowledged that policy and then weighed it against the competing factors identified in Malone.

The Order specifically recognized that the merits policy must be balanced against the realities presented by the record – including sustained delay, repeated noncompliance, failure to advance the case, prejudice, and the Court's need to manage its docket. After conducting that analysis, the court concluded that the competing factors outweighed the policy favoring adjudication on the merits.

That is precisely what Ninth Circuit law requires. *Malone* makes clear that while the merits policy is important, it is not dispositive and does not override a record of sustained noncompliance that undermines the orderly administration of justice. The bankruptcy court applied the correct standard and grounded its analysis in the record. Under Hinkson, that determination is entitled to deference.

e)     **LESSER SANCTIONS – EXPRESSLY**

**CONSIDERED AND REJECTED**

Appellant's argument fails most decisively on the fifth Malone factor. The bankruptcy court did not ignore lesser sanctions or bypass them in favor of dismissal. To the contrary, the Order reflects a deliberate and structured consideration of available alternatives, stating explicitly that "the Court has considered less drastic alternatives…" and proceeding to identify them. (Order, Dkt. 128, at p. 10, lines 25-28, p.11, lines 1-27, p.12, lines 1-16). Those alternatives included the imposition of monetary sanctions, permitting late filings, and dismissal without prejudice. The court did not merely list these options; it

20

evaluated them in the context of the record and concluded that none would ensure compliance or restore the orderly progression of the case.

That analysis is precisely what Ninth Circuit law requires. Under *Malone* and *United States v. National Medical Enterprises, Inc.*, 792 F.2d 906, 912–13 (9th Cir. 1986), a trial court abuses its discretion only when it fails to consider the impact of dismissal and the adequacy of less drastic sanctions before imposing the ultimate sanction. The corollary is equally clear: where the court does consider lesser sanctions and reasonably concludes they will be ineffective, dismissal falls squarely within its discretionary authority. That is exactly what occurred here. The bankruptcy court did not proceed reflexively or punitively; it evaluated available alternatives against a record of sustained noncompliance and determined that none would ensure compliance or restore the orderly progression of the case. In doing so, the court satisfied the governing standard and exercised precisely the kind of reasoned judgment that National Medical Enterprises requires.

This is not a case where lesser sanctions were overlooked or cursorily dismissed. It is a case where they were expressly considered and reasonably rejected. Under the deferential standard articulated in *Hinkson*, that determination is entitled to substantial deference and cannot be characterized as illogical or unsupported.

21

2. **THE COURT REJECTED THE "COUNSEL FAULT" DEFENSE**

a) **CLIENT RESPONSIBILITY IS WELL-ESTABLISHED LAW**

Appellant's attempt to shift responsibility to former counsel fails as a matter of both law and record. The bankruptcy court squarely rejected that position, explaining that the obligation to comply with court orders rests with the litigant and cannot be excused by attributing fault to counsel, particularly where no effort was made to seek relief, request extensions, or otherwise cure the ongoing noncompliance. That conclusion is firmly grounded in controlling Supreme Court authority. In *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962), the Court held unequivocally that a litigant "cannot now avoid the consequences of the acts or omissions of this freely selected agent," and is bound by counsel's conduct even where that conduct results in dismissal for failure to prosecute.

The Ninth Circuit has consistently applied that principle in the *Malone* line of cases, recognizing that responsibility attaches to the client where the record reflects a failure to take affirmative steps to address noncompliance or seek appropriate relief from the court. Here, the record reflects precisely that failure. Even accepting Appellant's premise that counsel experienced difficulties, Plaintiff took no meaningful action to mitigate those issues – no motion for extension, no

request for relief, and no effort to bring the case back into compliance. The absence of any corrective action is dispositive. This is not a case involving an isolated lapse or a client blindsided by a single attorney error; it is a case of ongoing noncompliance left unaddressed despite repeated opportunities for intervention. Under *Link* and its Ninth Circuit progeny, the bankruptcy court was fully entitled to hold Plaintiff accountable for that failure, and its rejection of the "counsel fault" defense was not only legally correct – it was compelled by the governing law and the record before it.

### 3. THE COURT RELIED ON WARNINGS – A CRITICAL FACTOR

#### a) DISMISSAL FOLLOWED EXPLICIT WARNINGS

Appellant's claim of inadequate notice is squarely refuted by the record. The bankruptcy court did not dismiss the case sua sponte or without warning. To the contrary, it issued repeated and explicit warnings that continued noncompliance would result in dismissal.

Most notably, in the July 29, 2025 Scheduling Order [Doc. 74], the Court imposed mandatory obligations concerning evidentiary objections and meet-and-confer requirements and expressly tied compliance to the risk of dismissal. The Court specifically warned that if Plaintiff missed "one more deadline," the action

23

would be dismissed, and further advised that noncompliance could result in both monetary and nonmonetary sanctions.

These were not vague admonitions or generalized cautions. They were direct warnings linking continued noncompliance to terminating sanctions. Appellant proceeded in the face of those warnings and failed to cure the underlying conduct. Under Ninth Circuit law, that strongly supports dismissal.

This is precisely what Ninth Circuit law requires. In *Hamilton v. Neptune Orient Lines, Ltd.*, 811 F.2d 498, 500 (9th Cir. 1987), the court made clear that the presence or absence of warning is a critical factor in evaluating dismissal, emphasizing that a trial court has an obligation to warn a litigant that dismissal is imminent before imposing the ultimate sanction. That principle was reaffirmed in *Oliva v. Sullivan*, 958 F.2d 272 (9th Cir. 1992), where the Ninth Circuit reversed a dismissal precisely because the record failed to demonstrate that counsel had been warned that termination was forthcoming. The contrast here is dispositive. Unlike in *Oliva*, where the absence of warning compelled reversal, the bankruptcy court here provided explicit and repeated warnings that continued noncompliance would result in dismissal. Those warnings satisfy the due process concerns identified in both *Hamilton* and *Oliva* and place this case squarely within the category of decisions that fall well within the court's discretionary authority. Where a litigant

24

proceeds in the face of clear warning and fails to correct the underlying conduct, dismissal is not only permissible – it is expected under Ninth Circuit law.

In that context, Appellant's "no notice" argument collapses. This is not a case involving surprise or lack of opportunity to cure. It is a case in which warnings were given, deadlines were missed, and noncompliance continued. Under *Oliva* and *Hamilton*, that sequence alone is sufficient to support dismissal and forecloses any claim that the sanction was imposed without adequate notice.

### 4. THE COURT DID NOT RELY ON A SINGLE MISSTEP

#### a) PATTERN – NOT INCIDENT

Appellant's attempt to portray the dismissal as the result of a single procedural lapse is directly contradicted by the Order itself. The bankruptcy court expressly found that the Motion did not "turn on a single missed filing," but on "a sustained pattern" of noncompliance with court-ordered obligations.

That distinction is critical. Ninth Circuit law does not favor dismissal for isolated inadvertence, but it does authorize dismissal where the record reflects repeated delay, missed deadlines, and ongoing failure to comply with court directives. The bankruptcy court evaluated the procedural history as a whole and concluded that the pattern of noncompliance prevented the case from proceeding in an orderly and efficient manner.

Under *Hinkson*, that determination is entitled to substantial deference. The record supports the finding of sustained noncompliance, and the dismissal falls squarely within the category of terminating sanctions repeatedly affirmed by the Ninth Circuit.

### 5. THE SERVICE ARGUMENT DOES NOT SAVE APPELLANT

Even assuming arguendo some technical defect in service, that contention does not undermine the dismissal. The bankruptcy court expressly found that Plaintiff had actual notice of the operative deadlines and obligations, understood the consequences of continued noncompliance, and nonetheless failed to act.

Those findings are dispositive. Actual notice defeats any claim of prejudice where the party had a meaningful opportunity to respond but failed to seek relief, request extensions, or otherwise bring the case into compliance. Due process requires notice and an opportunity to be heard – not perfection in the mechanics of service.

Accordingly, the service argument does not alter the *Malone* analysis or provide an independent basis for reversal. At most, it is a threshold procedural contention that the bankruptcy court expressly considered and rejected. It does not transform a record of sustained noncompliance into excusable conduct, nor does it insulate Appellant from the consequences of failing to prosecute the case.

26

6. **THIS WAS A TEXTBOOK EXERCISE OF DISCRETION – NOT AN ABUSE**

Under the governing standard articulated in *Hinkson*, reversal is warranted only where the trial court's decision is illogical, implausible, or without support in the record. None of those conditions is present here. The bankruptcy court identified and applied the correct legal standard under *Malone*, conducted an explicit factor-by-factor analysis, and grounded its conclusions in detailed factual findings drawn from the procedural history of the case. The record reflects repeated warnings to Plaintiff, sustained noncompliance with court-ordered obligations, and an express consideration – and rejection – of lesser sanctions as ineffective. This is not a case of arbitrary or unexplained decision-making; it is a case of deliberate, structured analysis applied to a developed evidentiary record.

Viewed through the deferential lens required by *Hinkson*, the bankruptcy court's ruling falls squarely within the range of permissible outcomes. Indeed, it represents the precise exercise of discretion that Ninth Circuit law contemplates: a court confronted with ongoing noncompliance, having provided notice and opportunity to cure, and having considered alternatives, determines that dismissal is necessary to preserve the integrity of its proceedings. That is not an abuse of discretion – it is its proper application.

////

## K.     CONCLUSION

### 1.     THE APPEAL SHOULD BE DENIED AND THE DISMISSAL AFFIRMED

This appeal presents no basis for reversal under the deferential standard governing review of terminating sanctions. The bankruptcy court identified and applied the correct legal framework under *Malone*, conducted an express factor-by-factor analysis, considered lesser sanctions, issued repeated warnings, and grounded its ruling in a detailed procedural record reflecting sustained noncompliance with court-ordered obligations.

Appellant's arguments do not expose legal error, lack of notice, or arbitrary decision-making. At most, they attempt to recast a documented history of missed deadlines, procedural noncompliance, and post-notice inaction into a technical service dispute. The bankruptcy court expressly considered – and rejected – that argument, finding that Appellant had actual notice, failed to timely act, and failed to cure the underlying noncompliance despite repeated opportunities to do so.

Under *Hinkson*, the question is not whether the Panel might have reached a different result in the first instance. The question is whether the bankruptcy court's ruling was illogical, implausible, or unsupported by the record. It was none of those things. It was a reasoned and measured exercise of discretion squarely supported by Ninth Circuit authority and the evidentiary record before the Court.

The record here reflects precisely the type of sustained noncompliance, repeated warnings, procedural delay, and ineffective lesser alternatives for which dismissal is authorized under *Malone* and its progeny. The bankruptcy court acted well within its discretionary authority in concluding that the adversary proceeding could no longer proceed in an orderly or efficient manner.

Accordingly, Appellee respectfully requests that the Panel affirm the January 20, 2026 Order Granting Motion to Dismiss in its entirety.

DATED:    May 18, 2026                    LAW OFFICE OF BARUCH C. COHEN
                                          A Professional Law Corporation

                                          By      /s/ *Baruch C. Cohen*
                                          Baruch C. Cohen, Esq.
                                          *Attorney for Appellee/Defendant*
                                          *Babak Kazemi Shirazi*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

**This brief complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B) (<u>see also</u> Fed. R. App. P. 32(a)(7)(B)) because:**

_X_ this brief contains **4550** words, excluding the parts of the brief exempted by Fed. R. Bankr. P. 8015(a)(7)(B)(iii) [<u>see also</u> Fed. R. App. P. 32(a)(7)(B)(iii)], *or*

_____this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)

**This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type style requirements of Fed. R. Bankr. P. 8015(a)(6) [<u>see also</u> Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6)] because:**

_X_ this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)* _MS WORD_ *(state font size and name of type style)* _Time New Roman 14_ , *or*

___ this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)* with *(state number of characters per inch and name of type style).*

DATED:     May 18, 2026       LAW OFFICE OF BARUCH C. COHEN
                                     A Professional Law Corporation

                                 By     */s/ Baruch C. Cohen*
                                 Baruch C. Cohen, Esq.
                                 *Attorney For Appellee/Defendant*
                                 *Babak Kazemi Shirazi*

## PROOF OF SERVICE OF DOCUMENT
### Seyed Jafar Jafari vs. Babak Kazemi Shirazi
### BAP # CASE NO: CC-26-1031

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

LAW OFFICE OF BARUCH C. COHEN
A Professional Law Corporation
4929 WILSHIRE BOULEVARD, SUITE 940
LOS ANGELES CA 90010

A true and correct copy of the foregoing document entitled: **APPELLEE'S RESPONSE BRIEF** will be served or was served in the manner stated below:

SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on May 18, 2026May 18, 2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.

COUNSEL FOR PLAINTIFF
EvanBFrankLaw@Gmail.com
Evan Barkley Frank, Esq.
1280 S Victoria Ave Ste 200
Ventura CA 93003-6551

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.


DATED: May 18, 2026              By      /s/ Baruch C. Cohen
                                         Baruch C. Cohen, Esq.

31